IN THE MATTER OF THE APPLICATION OF CHING LUM FOR A WRIT OF HABEAS CORPUS. (ALSO, IN THE MATTERS OF WONG YUEN, SUI JOY, AND KIMI YAMAMOTO.

August 2, 1915.

1. *Immigration—Deportation—Entering the United States:* An alien who came to the Hawaiian Islands previous to their annexation to the United States, and was living there at the time of such annexation cannot be said to "have entered the United States" within the

meaning of section 3 of the act of February 20, 1907, as amended by the act of March 26, 1910, 36 Stat. 263.

2.  *Same—Same—Same—Actual landing subject to statutory conditions:*  The provisions of the said statute for the deportation of aliens found "to be unlawfully within the United States", presume an actual landing of such aliens, subject to the conditions as to conduct set forth in the statute.

3.  *Habeas Corpus—Newly discovered evidence in behalf of respondent, basis for in pleadings; laches:*  A motion of respondent for leave to show that the alien though originally coming to Hawaii before annexation, later visited China and returned again to Hawaii, is denied, as there is no basis for such testimony in the pleadings and no showing that the alleged fact is newly discovered, and as such evidence, if existing, was within the reach of the respondent during the pendency of the proceedings.

*Habeas corpus:*  On demurrer to return.

*Thompson, Wilder, Watson & Lymer* for petitioners Ching Lum, Wong Yuen and Sui Joy.

*J. W. Cathcart* for petitioner Kimi Yamamoto.

*Jeff McCarn,* U. S. District Attorney, and *J. W. Thompson,* Assistant U. S. Attorney, for respondent.

DOLE, J.  In the first three of the above cases demurrers to the petitions were overruled, whereupon the respondent filed his returns which were demurred to by the petitioners, the fifth ground of demurrer being as follows:  "That it does not appear in the said return that the said Sui Joy is an alien who has ever entered the United States within the meaning of the law herein provided."  In the fourth case, the petitioner filed a traverse to the return of the respondent, in which, among other things, she raised the same point as raised on the fifth ground of the said demurrers, to-wit, that she was not subject to the immigration laws of the United States, having come to the Hawaiian Islands while they were under the jurisdiction of the Republic of Hawaii.

The argument on this point is, briefly, that the peti-

tioners, having come to the Hawaiian Islands previous to annexation, as alleged, and being domiciled residents here at the time of annexation, the statute does not apply to them, such persons, although aliens, not having "entered" the United States.

The following is the immigration rule applying to these cases:

"The application must state facts bringing the alien within one or more of the classes subject to deportation after entry. The proof of these facts should be the best that can be obtained. The application must be accompanied by a certificate of landing (to be obtained from the immigration officer in charge at the port where landing occurred) or a reason given for its absence, in which case effort should be made to supply the principal items of information mentioned in the blank form provided for such certificates. Telegraphic application may be resorted to only in case of necessity and must state (1) that the usual written application has been made and forwarded by mail, and (2) the substance of the facts and proof therein contained." Immigration Rule 22, subdivision 2.

The statute under which the petitioners are held is a part of section 3 of the act of February 20, 1907, as amended by the act of March 26, 1910, 36 Stat. 263. It is as follows:

"Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution *after such alien shall have entered the United States,* or who shall receive, share in, or derive benefit from any part of the earnings of any prostitute, or who is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, or who in any way assists, protects, or promises to protect from arrest any prostitute, shall be deemed to be unlawfully within the United States and shall be deported in the manner provided by sections 20 and 21 of this act."

The demurrers are allowed on the fifth ground. It is obvious from a reading of division 2 of Immigration Rule 22, above quoted, that the Commissioner General of Immi-

gration and the Secretary of Labor, who are authorized by the Immigration Act of February 20, 1907, sec. 22, 34 Stat. 898, to establish rules for carrying out the provisions of the act, have construed the act on the point referred to, as meaning an actual entry or landing in the United States. The said division 2 of the 22nd rule, in providing for an application by the immigration officers to the Secretary of Labor for authority to arrest an alien suspected of being unlawfully in the United States, requires, among other things, that the application "shall be accompanied by certificate of landing (to be obtained from the immigration officer in charge at the port where the landing occurred) or a reason given for its absence." Of course this can refer to nothing else than an actual landing in the United States. This construction is rendered still more positive by the "certificate of landing," required by the rule to accompany the application. The blank form provided by the Secretary of Labor and the Commissioner General of Immigration under the authority of the statute, is as follows:
"Form 564.

### Certificate as to Landing of Alien
(To accompany application for warrant of arrest.)

### DEPARTMENT OF COMMERCE AND LABOR

#### Immigration Service

................... ................................................., 190

I hereby certify that I have examined the records of the immigrant station at .................................................with reference to the record of the landing or entry of ..................................., an alien, and that the following facts relative to such landing or entry are disclosed by said records.

(1)   Name of alien,...................; age,...................; sex...................;
(2)   Race, ...................; country whence alien came,...................
(3)   Exact date and port of arrival in the United States,

.................................................................................................
(4)   Name of vessel and line,...................
(If alien arrived via Canada or Mexico, so state.)
(5)   Destination,   .................................................................

(6)   Occupation, ........................; money brought, $...........
(7)   By whom passage paid, ....................................
(8)   Whether ever in United States before, ...............
(9)   Whether inspected at time of arrival, .................

(If held for special inquiry, so state.)
Remarks:   ....................................................................

(Signature) .......................................................
(Official title) ............................................"

Such construction, being authoritative and official, is
entitled to great weight. Endlich's Interpretation of Stat-
utes, sec. 357.

Counsel in the Sui Joy, Ching Lum and Wong Yuen
cases, set forth somewhat exhaustively the constitutional
argument that Congress derived its powers to legislate as to
immigrant aliens after being admitted, solely from section
8 of the first article of the Constitution of the United States,
which gives it the power "to regulate commerce with for-
eign nations." Quoting from the brief, "the theory is that
commerce with foreign nations includes not only an ex-
change of commodities, but also the importation or incom-
ing of passengers. The proposition that Congress has no
power to regulate the affairs of individual persons in the
United States except as an incidental to some one of the
powers expressly given to it by the Constitution, is funda-
mental." It follows therefore that whereas Congress may
permit an alien immigrant to land under certain conditions ·
as to conduct thereafter while in the country, involving
forcible deportation upon his failure to conform to such con-
ditions, it may not deport alien residents for similar con-
duct, with whom there has been no such conditional entry
into the United States. In other words, an alien resident
of the United States in regard to whom there was no condi-
tion as to his conduct during his residence, that was made
the basis of his landing or entry into the country by a then
existing statute, is not within the scope of section 3 of the

immigration act of February 20, 1907, 34 Stat. 899, as amended by the act of March 26, 1910, 36 Stat. 263. Plainly the law does not affect persons who have not *entered* the United States previous to doing the acts charged. These petitioners all claim to have been living in Hawaii before and at the time of annexation. In matters of immigration the world *enter* has not acquired a technical meaning. It would appear that these cases might well have been disposed of on their inception, on the ground that the statue is too clear to require interpretation. *"Absoluta sententia expositore indiget."* Potter's Dwarris, 128; Vattel's first rule, id. 126.

As the ruling on this ground of the demurrer disposes of the cases, the court need not consider the other grounds.

It is not clear whether there remains a question of fact to be decided. The returns in the first three cases do not specifically deny the allegations of residence in Hawaii before annexation, but make a general denial of all further allegations and averments of said petitions necessary to be denied. The return in the fourth case accepts the allegations of the petition in that case that the petitioner arrived in Hawaii in the year 1897, as correct. She (Kimi Yamamoto) is, therefore, under the foregoing conclusions, entitled to her discharge under the writ, which is hereby ordered.

If the respondent desires to contest the allegations of residence in Hawaii in the first three cases, an opportunity will be given, otherwise such petitioners will be discharged.

August 4, 1915.

[3] On the afternoon of the day the foregoing decision was given in open court, counsel on both sides filed the following stipulation:

"It is hereby stipulated and agreed by and between the United States of America through J. W. Thompson, its assistant district attorney of the District and Territory of

Hawaii, and Sui Joy, Ching Lum and Wong Yuen, by their attorneys, Thompson & Milverton, that each of said petitioners were residents of the Hawaiian Islands for a period of more than five (5) years prior to the 15th day of June, A. D. 1900."

By which stipulation it would appear that the said petitioners were resident here for over three years before the annexation of Hawaii to the United States, which took place August 12, 1898. The court was thereupon prepared to order the discharge of the petitioners, according to the conclusions of the foregoing decision, but before such order was effectuated the assistant district attorney, acting for the respondent, moved the court for an opportunity of showing that the petitioners severally visited China after annexation and returned again to Hawaii.

Such motion must be denied, inasmuch as the cases contain no pleadings which would form a basis for such testimony and there is no showing that such information is newly discovered and as such information, if it exists, obviously has been, during the pendency of these proceedings, within the reach of the respondent.

The writs are made absolute and the petitioners discharged.

*Reversed: United States v. Sui Joy.* 240 Fed. 392; *United States v. Kimi Yamamoto,* 240 Fed. 390.